UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
HAN KIM, et al.,               )
                               )
          Plaintiffs,          )
                               )
     v.                        )   Civil Action No. 09-648 (RWR)
                               )
DEMOCRATIC PEOPLE'S REPUBLIC   )
of KOREA, et al.,              )
                               )
          Defendants.          )
_____)
```

## MEMORANDUM OPINION

Plaintiffs Han Kim and Yong Seok Kim ("the Kims") brought suit against the Democratic People's Republic of Korea ("North Korea") alleging claims under the terrorism exception to the Foreign Sovereign Immunities Act ("FSIA"), and North Korea failed to respond. The Kims' motion for entry of default judgment was denied, though, for lack of sufficient evidence pled and produced to vest in the court subject matter jurisdiction. As the D.C. Circuit has reversed, default judgment will be entered in favor of the Kims and damages will be awarded.

BACKGROUND

The facts of this case are detailed in <u>Kim, et al. v. Democratic People's Republic of Korea</u>, 950 F. Supp. 2d 29, 35-41 (D.D.C. 2013).  Briefly, Han Kim, the son of Reverend Kim Dong Shik ("Reverend Kim"), and Yong Seok Kim, Reverend Kim's brother, brought this suit against North Korea in connection with Reverend Kim's abduction, and presumed torture and killing. <u>Id.</u> at 30.  Reverend Kim was a missionary in China "providing humanitarian and religious services to the families of North Korean defectors and refugees who had fled across the Sino-Korean border seeking asylum." <u>Id.</u> at 36.  Reverend Kim was abducted from China by North Korean agents, and presumably imprisoned, tortured, and killed for his humanitarian efforts. <u>Id.</u> at 38-39.

When the Kims moved for default judgment, after North Korea failed to respond to the complaint, this Court found that subject matter jurisdiction was lacking because the Kims did not sufficiently meet the standard for pleading and proving that Reverend Kim was tortured, as is required by the FSIA's terrorism exception. <u>Id.</u> at 43.  The case was dismissed and the Kims appealed.

On appeal, the D.C. Circuit reversed and ordered that default judgment be entered in favor of the Kims. <u>Kim, et al. v. Democratic People's Republic of Korea</u>, 774 F.3d 1044, 1051

(D.C. Cir. 2014); see also Mandate of U.S. Court of Appeals for the D.C. Circuit, ECF No. 68.  The D.C. Circuit held that evidence that North Korea was involved in the abduction of Reverend Kim coupled with expert testimony presented by the Kims about the treatment of North Korea's political prisoners is sufficient to meet the standard for subject matter jurisdiction under the FSIA's terrorism exception.  Kim, 774 F.3d 1050-1051.  The Kims, then, will be awarded default judgment and damages will be assessed.

## DISCUSSION

Actions under the Foreign Sovereign Immunities Act usually proceed in three parts: (1) a finding as to the district court's jurisdiction, (2) a finding as to the liability of the defendant foreign sovereign, and (3) an assessment of damages against the defendant foreign sovereign.  See, e.g., Roth, et al. v. Islamic Republic of Iran, Civil Action No. 11-1377 (RCL), 2015 WL 349208 (D.D.C. Jan. 27, 2015) (resolving an action under the FSIA by evaluating the court's jurisdiction, then defendant's liability, and finally damages); Moradi, et al. v. Islamic Republic of Iran, Civil Action No. 13-0599 (ESH), 2015 WL 56043 (D.D.C. Jan. 5, 2015) (same).  Here, the D.C. Circuit resolved the jurisdictional question, and by doing so also resolved the question of liability against North Korea, because "liability under § 1605A(c) . . . exist[s] whenever the jurisdictional

requirements of § 1605A(a)(1) are met." Moradi, 2015 WL 56043 at *9 (citing Kilburn v. Islamic Republic of Iran, 699 F. Supp. 2d 136, 155 (D.D.C. 2010); Gates v. Syrian Arab Republic, 580 F. Supp. 2d 53, 64-69 (D.D.C. 2008); and Murphy v. Islamic Republic of Iran, 740 F. Supp. 2d 51, 72 (D.D.C. 2010)).  The only issue that remains is the proper assessment of damages.  Under the FSIA, "damages may include economic damages, solatium, pain and suffering [collectively, compensatory damages], and punitive damages."  28 U.S.C. § 1605A(c).[1]

I.  COMPENSATORY DAMAGES

In order to be awarded compensatory damages, "a plaintiff must prove that the projected consequences [of the defendant's actions] are 'reasonably certain' (i.e. more likely than not) to occur, [or that actual consequences have occurred,] and must prove the amount of damages by a 'reasonable estimate' consistent with [the D.C. Circuit's] application of the American rule on damages."  Hill v. Republic of Iraq, 328 F.3d 680, 681 (D.C. Cir. 2003).  Damages are assessed through findings as to each plaintiff, "including the injuries [he] suffered . . . and

_____

[1] A plaintiff may establish the necessary proof for damages through affidavits or live testimony.  See Weinstein v. Islamic Republic of Iran, 175 F. Supp. 2d 13, 21 (D.D.C. 2001) (finding that affidavits can form a sufficient evidentiary basis under the FSIA).  Here, the Kims have provided various affidavits supporting proposed findings of fact to establish damages.  No damages hearing will be necessary.

[his] citizenship (as is relevant to [his] entitlement to recover under section 1605A of the FSIA)." Roth, 2015 WL 349208 at *4.

Han Kim is a resident of St. Charles, Missouri and was born on October 23, 1976 in Jinhae, South Korea. Decl. of Han Kim, ECF No. 17 ¶¶ 1-2. He is the youngest child of Reverend Kim and Jung Soon Kim. Id. ¶ 3. When Reverend Kim was abducted in 2000, Han Kim was a permanent resident of the United States, and later became a U.S. citizen in 2003. Id. ¶ 4. Han Kim had a loving relationship with his father throughout his childhood and recalls his father as a unifying force in the family at the untimely death of Han Kim's mother. Id. ¶¶ 6-12. At the age of 16, Han Kim travelled to the United States where he graduated from high school and college. Id. ¶¶ 14-16.

Han Kim's sister Dani told him about his father's abduction a few days after Reverend Kim's kidnapping. Id. ¶ 24. In "[t]he days following the report that [his] father had been violently kidnapped . . . [he] was seized with apprehension and fears about his [father's] wellbeing and fate." Id. ¶ 27. Being so far away made it "especially painful and frustrating." Id. Han Kim found himself "unable to sleep" and unable to "stop thinking about what had happened to [his] father." Id. The abduction occurred while Han Kim was still in college, and made it difficult for him to focus on his studies. Id. ¶ 28. Not

knowing for certain what has happened to his father has caused him "suffering and grief." Id. ¶ 30.  It is evident from Han Kim's declaration that he has been deeply affected by his father's kidnapping, and presumed torture and death.  Id. ¶ 35-45.

Yong Seok Kim is a resident of Newark, California and a U.S. citizen.  Decl. of Yong Seok Kim, ECF No. 18 ¶ 1.  Reverend Kim was Yong Kim's older brother by seven years.  Id. ¶ 5.  Yong Kim was very close to his older brother and viewed him as a father figure.  Id. ¶ 9.  Reverend Kim provided meaningful advice to Yong Kim throughout Reverend Kim's life.  Id. ¶ 11.  After Yong Kim moved to the United States in 1985, Reverend Kim visited him two to three times a year, and they maintained a close relationship.  Id. ¶ 12.

Yong Kim recalls learning about Reverend Kim's abduction from Yong Kim's nephew, Tae Ha Kim.  Id. ¶ 16.  The initial notice of his brother's abduction caused him to be in shock and fear for his brother's life.  Id. ¶ 17.  Yong Kim "thought about [his] brother day and night and [he] was unable to sleep."  Id.  After some time with no notice of Reverend Kim's whereabouts, Yong Kim's "shock turned to despair and depression."  Id. ¶ 18.  Reverend Kim's abduction, and the lack of information as to his condition, made it difficult for Yong Kim to work, focus, and maintain family relationships.  Id. ¶ 19.  "The unrelenting

worry and fear over [his] brother's abduction has caused [him] to experience a long term sadness and depression." Id. ¶ 28. It is clear from Yong Kim's declaration that Reverend Kim's abduction, and presumed torture and death have caused him great emotional strife and has profoundly affected his life.

The Kims seek compensatory damages for their pain, suffering, and solatium. Solatium, a form of compensatory damages, seeks "to compensate persons for mental anguish, bereavement and grief that those with a close personal relationship to a decedent experience as well as the harm caused by the loss of the decedent's society and comfort." Roth, 2015 WL 349208 at *15 (quoting Oveissi v. Islamic Republic of Iran, 768 F. Supp. 2d 16, 25 (D.D.C. 2011)) (internal quotation marks and alterations omitted). "Courts may presume that those in direct lineal relationships with victims of terrorism suffer compensable mental anguish[,] . . . and testimony proving a close emotional relationship will usually be sufficient to sustain an award of solatium damages" for siblings. Id. Han Kim and Yong Kim have both demonstrated a close emotional relationship to Reverend Kim, and both have expressed their deep grief as a result of his abduction, and presumed torture and death.

While it is difficult to quantify the grief that Han Kim and Yong Kim have experienced, and continue to experience, as a

result of North Korea's violent actions, these plaintiffs are entitled to compensation for their loss, pain, mental anguish, and suffering.  Accordingly, Han Kim and Yong Kim will be awarded a judgment of $15,000,000 each against North Korea in compensatory damages, amounting to approximately $1,000,000 per year since Reverend Kim's initial abduction in 2000.  This calculation is within the range of damage awards in similar cases that involve abduction and torture by a non-immune foreign sovereign.  See, e.g., Massie v. Gov't of Democratic People's Republic of Korea, 592 F. Supp. 2d 57, 77 (D.D.C. 2008) (awarding $1,250,000 to the spouse of a torture victim held for nearly one year by North Korea); Anderson v. Islamic Republic of Iran, 90 F. Supp. 2d 107, 114 (D.D.C. 2000) (awarding $6,700,000 to the daughter of a torture victim held for approximately six and a half years); Cicippio v. Islamic Republic of Iran, 18 F. Supp. 2d 62, 70 (D.D.C. 1998) (awarding $10 million to the spouse of a torture victim held for 63 months and $9 million to the spouse of a torture victim held for 44 months).

II.  PUNITIVE DAMAGES

"Punitive damages are not meant to compensate the victim, but [are] instead meant to award the victim an amount of money that will punish outrageous behavior and deter such outrageous conduct in the future."  Bodoff v. Islamic Republic of Iran, 907 F. Supp. 2d 93, 105 (D.D.C. 2012) (quoting Oveissi v. Islamic

Republic of Iran, 879 F. Supp. 2d 44, 56 (D.D.C. 2012)).  The determination as to the proper amount of punitive damages to award to a plaintiff is based on four factors: "(1) the character of the defendants' act, (2) the nature and extent of harm to the plaintiffs that the defendants caused or intended to cause, (3) the need for deterrence, and (4) the wealth of the defendants."  Id. (quoting Acosta v. The Islamic Republic of Iran, 574 F. Supp. 2d 15, 30 (D.D.C. 2008)).

The Kims have sufficiently demonstrated that the relevant factors weigh in favor of awarding punitive damages.  See Bodoff, 907 F. Supp. 2d at 105 (explaining the four-factor test for punitive damages).  The character of North Korea's acts against Reverend Kim are "awful and worthy of the gravest condemnation."  Roth, 2015 WL 349208 at *18 (applying the first factor of the four-part punitive damages test).  North Korea has caused irreparable emotional and psychological harm to the Kims.  See Bodoff, 907 F. Supp. 2d at 105.  The abduction and presumed torture by North Korea of missionaries seeking to aid refugees warrants significant deterrence.  See id.  Usually, the wealth of the defendant is determined by the foreign sovereign's annual expenditures in support of terrorist activities.  Roth, 2015 WL 349208 at *18.  No such information for North Korea is readily accessible, though, if it is accessible at all.  Calderon-Cardona v. Democratic People's Republic of Korea, 723 F. Supp.

2d 441, 484-485 (D.P.R. 2010).  Accordingly, punitive damages

will be awarded collectively in the amount of $300 million,

which is within the range of punitive damages awarded by other

courts in FSIA actions.  See, e.g., Oveissi, 879 F. Supp. 2d at

56-57 (awarding $300 million in punitive damages and collecting

FSIA cases where similar punitive damages amounts were awarded);

Calderon-Cardona, 723 F. Supp. 2d at 485 (awarding $300 million

in punitive damages against North Korea).

<u>CONCLUSION</u>

    Because the D.C. Circuit has ordered that default judgment

be entered against the Democratic People's Republic of Korea and

the Kims provided evidence supporting an award of damages,

default judgment will be entered, each plaintiff will be awarded

$15 million in compensatory damages, and punitive damages

totaling $300 million will be assessed against North Korea.  A

final order accompanies this memorandum opinion.

    SIGNED this 9th day of April, 2015.


                            _____/s/_____
                            RICHARD W. ROBERTS
                            Chief Judge